THE CONTINENTAL INSURANCE COMPANY OF NEW YORK
v. W. W. WILSON.

1. INSURANCE POLICY — *Arbitration, When Optional.* A clause in a policy of insurance, which simply provides that any difference of opinion between the company and the insured, as to the amount of loss sustained by the latter, may be arbitrated, does not constitute such arbitration a condition precedent to bringing suit thereon. Such provision leaves arbitration optional with the parties, and either may decline to arbitrate.

2. ——— *Waiver of Arbitration — Estoppel.* Where a policy contains an arbitration clause, and by its terms makes arbitration a condition precedent, and the insured, who has suffered a loss thereunder, demands arbitration, and the company refuses, such refusal is a waiver of the provision, and the company may not subsequently insist upon arbitration, and is also estopped from setting up failure to arbitrate as a defense to an action on said policy.

*Error from Linn District Court.*

THE case is stated in the opinion.

*Jas. D. Snoddy,* for plaintiff in error.

*W. R. Biddle,* for defendant in error; *H. T. Smith,* of
counsel.

Opinion by STRANG, C.: March 8, 1887, the plaintiff in
error issued its policy of insurance to the defendant in error,
promising therein to indemnify him against loss or damage
by cyclone in the sum of $1,300, upon his stone dwelling-
house and household effects therein. April 21, 1887, the
neighborhood of the defendant in error was visited by a
heavy wind storm, cyclonic in its character, which struck
and severely wrecked his house, and also destroyed some of
his household goods therein, resulting in a loss to him, as
he alleges, of $1,040 — $1,000 on his dwelling-house and
$40 on his goods. On the same day he notified the insur-
ance company of his loss by the storm. May 31, 1887, he
made and sent to the company proof of his loss. A few days
after the storm, Odell and Forward, agents of the company,
visited the premises and looked them over. Afterward there
was some talk between the defendant in error and the agents
of the plaintiff in error about arbitrating the matter, but no
arbitration was ever had. January 2, 1888, Wilson began
his action in the district court of Linn county. January 12th
the insurance company filed its answer challenging the amount
of loss sustained by Wilson, and pleading that by the terms
of their policy they had a right to arbitrate the difference be-
tween the company and Wilson; that the company had de-
manded arbitration and Wilson had refused to join therein,
and claiming that, as Wilson had refused to arbitrate, he
could not maintain his action. The company also claimed an
offset in the form of a premium note given by Wilson to the
company for $52, and which, they allege, had never been
paid. January 22, 1888, a reply was filed confessing the off-

set and averring that the plaintiff below was ready and willing to arbitrate, but that the insurance company had refused to submit to arbitration. The case was tried by the court and a jury April 5, 1888. The jury returned a verdict for the plaintiff below, assessing his damages at $838.95. A motion for a new trial was overruled, and time given to make a case for this court.

As we view the record, there is but one question for this court to determine. The alleged error in the assessment of the amount of damages hardly rises to the dignity of a question, under the oft-repeated decisions of this court, and the evidence in the case. There is certainly evidence to support the finding of the jury in the sum returned by them. Some of the witnesses fixed the amount of damages suffered by Wilson at much more than the amount returned by the jury. The trial court approved the verdict. The real question is, Was Wilson estopped from maintaining his action by any refusal of his to submit the question of the amount of his loss to arbitration, or by failure to submit to the company proper proof of loss? The policy upon which this action is founded requires that the insured shall give the company notice in writing of his loss, in case loss occurs, within fifteen days, and that he make and transmit to the company his proof of loss within sixty days after it occurs. In this case the defendant gave the agents of the company notice the next day after the storm, and forty days thereafter made and sent the company proof of his loss. There is no complaint of want of notice of the loss within fifteen days, and actual notice was given the next day after the storm.

Plaintiff in error does complain of the sufficiency of the proof of loss. As the proof of loss was made and sent to the company May 31, 1887, twenty days before the expiration of the period of time fixed in the policy during which it must be made, and the company held it without making any objection thereto until the 29th of July, 1887, and until long after the time as fixed in the policy for making the proof of loss had expired, it is estopped from making any complaint

now. (98 Pa. St. 627; 67 Ga. 14; 67 id. 661; 132 Mass. 489; 54 Cal. 442; 28 Wis. 472; 31 id. 160; 52 Me. 492; 60 Ill. 465; 43 Barb. 351; 16 Wend. 85; 11 Mo. 278; 91 U. S. 238.) The arbitration clause of the policy reads as follows:

"Differences of opinion arising between the parties hereto as to the amount of loss or damage may be settled by arbitration; each party to select one arbitrator, and in case of disagreement, they to select a third, and their award in writing, under oath, shall be binding as to the amount of loss, the cost of said arbitration to be borne by the parties hereto equally."

There is nothing in the above provision to render the arbitration proceeding a condition precedent to the maintenance of an action on the policy for loss sustained under it. (79 Pa. St. 478; 138 Mass. 572; 67 Iowa, 272; 54 Wis. 418; 30 N. W. Rep. 350; 4 McCrary, 125.) The language of the provision quoted allows arbitration, but leaves it optional with the parties to the contract, and it therefore follows, that either may decline arbitration. (2 Wood, Ins. 1014, 1015.)

1. Insurance policy—arbitration, when optional.

Counsel argues that the following provision renders the arbitration clause absolute and binding upon the parties, and also makes it a condition precedent:

"And it is hereby mutually understood and agreed by and between this company and the assured, that this policy is made and accepted upon and with reference to the foregoing terms, conditions, stipulations and restrictions, all of which are hereby declared to be a part of this contract, and are to be used and resorted to in order to determine the rights and obligations of the parties hereto, in all cases not herein otherwise especially provided for in writing."

This provision adds nothing to the one in relation to arbitration. It simply refers to all preceding "terms, conditions, stipulations and restrictions," and declares they are to be used and resorted to to determine the rights and obligations of the parties to the policy. It can hardly be claimed that this very general provision at the end of the policy, changes any of the preceding terms, conditions, stipulations, and restrictions of the policy, rendering an optional provision absolute and im-

perative. It would require a much more definite provision than this one to oust the jurisdiction of the courts. But the contention of the plaintiff in error has been settled against it by frequent decisions of the courts of this country. (*Nurney v. Fireman's Fund Ins. Co.*, Mich., 30 N. W. Rep. 350, and cases there cited.) There being nothing in the policy requiring arbitration as a condition precedent to the maintenance of an action thereon by the plaintiff below, it follows that the trial court did not err in holding that evidence in relation to arbitration was irrelevant and therefore incompetent, nor in taking such evidence from the jury.

There is one other phase of the question to which our attention is called. The evidence shows that the defendant in error, very soon after the injury to his property, notified the plaintiff in error that he wanted to arbitrate the question of damages, and was informed by Odell, agent of the company, that he did not have time then to attend to it; that some days after he notified Forward, agent of the company, that he wanted to arbitrate, who said in reply, he'd "be d——d if he would arbitrate;" and added, "You may sue if you want to." If the arbitration provision in the policy in this case required arbitration as a condition precedent, the reply of Forward to Wilson's demand for arbitration, would amount to a waiver of the arbitration provision. When, in response to Wilson's demand for arbitration, the company, by its agent, refused to arbitrate, it was estopped from calling on Wilson subsequently to arbitrate, and estopped from claiming any right of arbitration thereafter. The company could not decline arbitration when demanded by Wilson, and still hold him to it. The company having declined arbitration, Wilson would have the right to bring suit at once.

2. Waiver of arbitration—estoppel.

It is recommended that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.